IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ACCOLADE SYSTEMS LLC | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| vs. | § | CASE NO. 6:07 CV 48 |
| | § | PATENT CASE |
| CITRIX SYSTEMS, INC. | § | |
| | § | |
| **Defendant** | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Citrix's summary judgment motion based on the Settlement and Licensing Agreement ("Agreement") between Cisco Systems, Inc. ("Cisco") and Accolade Systems LLC ("Accolade") (Docket No. 193) and Accolade's motion for leave to conduct additional fact discovery regarding the applicability of the Agreement (Docket No. 211). As stated at the pretrial hearing, the Court **GRANTS** Citrix's motion for summary judgment based on the Agreement release provision, and since the Agreement release provision is unambiguous, the Court **DENIES** the motion for leave to conduct additional fact discovery.

### BACKGROUND

Accolade brought this action for patent infringement based on U.S. Patent. No. 7,130,888 ("the '888 patent") against Citrix Systems, Inc. ("Citrix"), Webex Communications, Inc. ("Webex"), and Laplink Software, Inc. Accolade alleges that Citrix's GoTo Assist, GoToMyPC, GoToMeeting, and GoToMeeting with GoToWebinar services (collectively "Go To Services") infringe on the '888 patent. Citrix is the only remaining defendant. *See* Orders of Dismissal with Prejudice, Docket Nos.

1

49, 171.

On April 6, 2009, Accolade entered into the Agreement with Cisco Systems, Inc. ("Cisco"), Webex's parent company, resulting in Webex's dismissal from the case. The Agreement sets out the terms of the settlement between Accolade and Webex, including those regarding required payments, the dismissal of claims, and the grant of rights and releases. Although Citrix is not a party to the Agreement, Citrix contends that Accolade's claims are barred due to the Agreement license, covenant not to sue, limitations on assertions, and release provisions. *See* Agreement §§ 2.2, 2.3, 2.5, 3.1, Def.'s Mot., Ex. A. Citrix contends that the Agreement applies to Citrix as a "customer," a "user," or an "Authorized Third Party" of Cisco's products and services. Although Citrix moved for summary judgment under several provisions of the Agreement, the Court can resolve the motion by addressing only the release provision. Accordingly, the Court does not need to reach the other grounds for summary judgment based on the other contract provisions.

Citrix argues that under the plain language of the release provision, Accolade unambiguously released Cisco, Authorized Third Parties, and all of their users and customers, from any and all causes of action and claims, including actions based on the '888 patent. Citrix asserts that there can be no genuine dispute that Citrix is a "customer" and "user" of Cisco's products because Citrix has purchased more than $16 million of Cisco's products and services. Citrix states that Citrix has used only Cisco routers and switches with its GoTo Services. Citrix also asserts that there can be no genuine dispute that Citrix is an "Authorized Third Party" because Citrix falls within the definition of "Authorized Third Party" under the Agreement, which includes "users and customers." Citrix

concludes that Accolade has released Citrix from all claims based on the accused Go To Services.[1]

Accolade responds that the release provision does not apply to Citrix under the circumstances of this case. Accolade first argues that the release provision only applies to past claims; second, that the release provision does not apply to Citrix in light of the alleged intent of the parties to the Agreement to exclude Citrix as a benefitting party of the Agreement; and third, that the release provision only applies where a Cisco product is necessary for an accused product to meet all elements of infringement, and the accused GoTo Services do not require any Cisco products to infringe the '888 patent. Accolade concludes that the release provision does not bar Accolade's claim that GoTo Services infringe the '888 patent. Accolade contends that the Agreement is unambiguous and extrinsic evidence is not necessary to interpret it. However, Accolade also argues that adopting Citrix's interpretation of the release provision would render the Agreement ambiguous, and Accolade would then seek to present extrinsic evidence to interpret the release provision.

## APPLICABLE LAW

**Summary Judgment Standard**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby,*

---

[1] Citrix also asserts that there is no genuine issue that Citrix provided the accused Go To Services prior to the "Effective Date" of the Agreement and that the '888 patent is a "Licensed Patent" under the Agreement. Accolade does not contest these points.

3

*Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue for trial exists, the court views all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587 (1986).

If the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must assert competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). The party opposing summary judgment is required to identify evidence in the record and articulate the manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248. Summary judgment must be granted if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**California Contract Law**

Contract interpretation is a question of state law. *Tex. Instruments, Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000). California law governs the Agreement. Agreement 1, Def.'s Mot., Ex. A. Under California contract law, "[t]he words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." CAL. CIV. CODE § 1644. When parties use technical words, those technical

words should be "interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense." CAL. CIV. CODE § 1645.

## ANALYSIS

The Agreement release provision states

> Company,[2] on behalf of itself and its Affiliates, successors and assigns, hereby releases, acquits and forever discharges Cisco, its Affiliates, <u>Authorized Third Parties</u>, and all of their respective current and former predecessors, successors, officers, employees, agents, directors, shareholders, owners, <u>users, customers</u>, distributors, resellers (including value-added resellers), manufacturers (including original equipment or device manufacturers), assemblers, replicators, and integrators (collectively "***Cisco Released Parties***") [(emphasis in contract)] from any and all actions, causes of action, claims or demands, liabilities, losses, damages, attorneys' fees, court costs, or any other form of claim or compensation for known and unknown acts, including without limitation any claim of infringement of the Licensed Patents, that happened prior to the Effective Date, and Company, on behalf of itself and its Affiliates, covenants not to sue or threaten to sue (or cooperate with, instruct, encourage, or aid a third party to sue or threaten to sue) any Cisco Released Party on account of any such claim.

Agreement § 3.1, Def.'s Mot., Ex. A (emphasis added). The parties dispute whether the release provision protects Citrix as a "customer," a "user," and an "Authorized Third Party," any one of which would release Citrix from Accolade's claims.

The release provision clearly states that the release applies to "customers," "users," and "Authorized Third Parties" of Cisco's products. "Customers" and "users" in the release provision have ordinary meanings: those who purchase and use, respectively, Cisco products. Citrix purchased more than $16 million of Cisco's products and services, including Cisco routers and switches, and uses those products to provide Citrix's accused Go To Services. In fact, Citrix uses only Cisco routers and switches with its GoTo Services. This renders Citrix a "customer" and a "user" of

---

[2]"Company" is defined to include Accolade. Agreement § 1.5, Def.'s Mot., Ex. A.

5

Cisco's products. Thus, on its face, the release provision applies to Citrix as a "customer" and a "user" of Cisco's products.

The release provision also applies to "Authorized Third Parties." An "Authorized Third Party" is

> any Entity that is implicitly or explicitly authorized by a Party or its Affiliates to exercise any legal rights or to perform any activities with respect to a Licensed Product of such Party or its Affiliates, including without limitation the suppliers, manufacturers, original equipment or device manufacturers, assemblers, replicators, integrators, distributors, resellers, value-added resellers, <u>customers and users of such Licensed Products</u>.

Agreement § 1.3, Def.'s Mot., Ex. A (emphasis added). Thus, Citrix is an "Authorized Third Party" if it is a customer and user of the "Licensed Products." "Licensed Products" are

> <u>any and all products and services</u>, including any portions thereof, that are <u>directly or indirectly</u>, <u>alone or in combination with other products or services</u>: (i) <u>sold or provided by Cisco</u> or its Affiliates; (ii) supplied to either Cisco or its Affiliates; or (iii) supplied to Authorized Third Parties pursuant to direction of and on behalf of Cisco or its Affiliates. For the avoidance of doubt, Licensed Products do not include products and services of a third party that are not provided (directly or indirectly) by or on behalf of Cisco or its Affiliates.

Agreement § 1.9, Def.'s Mot., Ex. A (emphasis added). "Licensed Products" expressly includes "any and all products and services . . . sold or provided by Cisco." Thus, "Licensed Products" includes the Cisco routers and switches purchased by Citrix from Cisco and used with Citrix's GoTo Services. Accordingly, as a "customer" and "user" of "Licensed Products," Citrix is an "Authorized Third Party" under the release provision.

The Agreement release provision applies to Citrix as a "user," a "customer," and an "Authorized Third Party" of Cisco's products. Thus, Citrix is released "from any and all actions, causes of action, claims or demands, liabilities, losses, damages, attorneys' fees, court costs, or any

6

other form of claim or compensation for known and unknown acts, including without limitation any claim of infringement of the Licensed Patents," which includes the '888 patent. Agreement § 3.1; Agreement, Ex. A, Def.'s Mot., Ex. A. Accordingly, Citrix is released from all of Accolade's claims of infringement in this case.

The clear and plain language of the release provision refutes Accolade's arguments that the release provision does not apply to Citrix. First, Accolade argues that the release provision only applies to past claims. However, the release provision states that it "forever discharges, Cisco, its Affiliates, Authorized Third Parties, and all of their respective current and former . . . users [and] customers." Agreement § 3.1, Def.'s Mot., Ex. A. This language clearly specifies that the release lasts "forever" and applies to "current and former" users and customers. "Forever" plainly means never ending, and "current and former" plainly means both past and present. Thus, the release provision never ceases to apply to both past and present customers. The clear and plain language of the release provision refutes Accolade's argument.

Second, Accolade argues that the release provision does not apply to Citrix in light of Accolade and Cisco's alleged intent to exclude Citrix as a benefitting party of the Agreement. However, the parties' intent is clearly evident in the release provision. The release provision expressly applies to "customers," "users," and "Authorized Third Parties" and lasts "forever" to both "current and former" users and customers. *See* Agreement § 3.1, Def.'s Mot., Ex. A. Citrix is clearly a "customer" and "user" of Cisco's products and falls under the express definition of "Authorized Third Parties." *See supra*. If Accolade and Cisco intended to limit the Agreement to exclude those in Citrix's situation, then they could have used narrowing language to reflect such intentions. They did not. Instead, the parties agreed on broad language that encompasses Citrix as

7

a "customer," a "user," and an "Authorized Third Party." Accordingly, under the clear and plain language of the release provision, Accolade released Citrix from its claims.

Third, Accolade argues that the release provision only applies where a Cisco product is necessary for an accused product to meet all elements of infringement, and the accused GoTo Services do not require any Cisco products to infringe the '888 patent. However, the release provision contains no indication that Accolade and Cisco intended to limit the release provision to instances where a Cisco product is a necessary element of infringement. "Licensed Products" is defined very broadly and is not limited to products that infringe the "Licensed Patents" or satisfy claim limitations of "Licenced Patents." To the contrary, the release provision contains expansive language. *See supra*. In light of such language, any assumptions or inferences should be made in favor of broadly interpreting the release provision rather than narrowly interpreting it. Thus, there are no adequate grounds for limiting the release provision in the manner requested by Accolade.

Accolade seeks leave to conduct additional discovery into Citrix's use of Cisco's products in the accused devices and services and Cisco's intent in entering into the Agreement. However, Accolade also argues the Agreement is not ambiguous and extrinsic evidence is not necessary to interpret the Agreement. Accolade only contends the Agreement is ambiguous and extrinsic evidence is relevant if the Court rejects Accolade's proposed interpretation. Either the Agreement is ambiguous or it is not. This Agreement is clear on its face, and Accolade has not shown extrinsic evidence is necessary to interpret it. Further, Accolade has agreed that the Agreement is unambiguous. In light of the parties' stipulation that unambiguous terms do not require further interpretation using extrinsic evidence, further discovery on interpreting the release provision is not necessary. Accordingly, the Court **DENIES** Accolade's motion to conduct additional fact discovery.

## CONCLUSION

The Agreement release provision is unambiguous; thus, extrinsic evidence is not necessary to interpret it. Furthermore, the release provision applies to Citrix as a "customer," a "user," and an "Authorized Third Party" of Cisco routers and switches. Under the release provision, Accolade released Citrix from all claims in this case. Therefore, the Court **GRANTS IN PART** Citrix's motion for summary judgment based on the release provision. The Court **DENIES** as moot Citrix's other grounds for summary judgment. The Court **DENIES** all other pending motions as moot.

**So ORDERED and SIGNED this 29th day of May, 2009.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**